**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| ROSA MARQUEZ, Derivatively on Behalf of STARBUCKS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LAXMAN NARASIMHAN, RICHARD E. ALLISON, JR., ANDREW CAMPION, BETH FORD, MELLODY HOBSON, JORGEN VIG KNUDSTORP, NEAL MOHAN, DANIEL SERVITJE, MIKE SIEVERT, WEI ZHANG, SATYA NADELLA, and RACHEL RUGGERI,<br><br>Defendants,<br><br>and,<br><br>STARBUCKS CORPORATION,<br><br>Nominal Defendant. | **Case No:**<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Rosa Marquez ("Plaintiff"), by and through her undersigned counsel, brings this derivative complaint for the benefit of Nominal Defendant, Starbucks Corporation ("Starbucks" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy Defendants' breaches of fiduciary duties and violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's allegations are based upon her personal knowledge as to herself and her own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Starbucks with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record, including filings in the related securities class action *Garbaccio v. Starbucks Corp., et al.,* Case No. 2:24-cv-01362-JHC (W.D. Wash.) (the "Securities Class Action").

## INTRODUCTION

1. This is a shareholder derivative action brought by Plaintiff on behalf of Starbucks against certain of its officers and directors for violations of state and federal law occurring between approximately November 2023 and April 30, 2024.

2. Starbucks is a global coffeehouse company headquartered in Seattle, Washington. Starbucks generates the majority of its revenue from the sale of coffee and tea beverages at its company-operated stores, primarily in the United States and China, which are its largest and second-largest markets, respectively.

3. This derivative action arises from material misstatements made by the Individual Defendants (defined below) concerning Starbucks' "triple-shot" reinvention plans. Those plans



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

were represented as initiatives designed to strengthen Starbucks' global brand, drive long-term growth, and improve internal operations.

4. The Individual Defendants assured investors that the reinvention plans were "fueling revenue growth," delivering "improved partner and customer experiences," that store "traffic continues to be strong and it's growing," and that the plans were generating "exciting momentum in China."

5. In reality, the Individual Defendants knew, or recklessly disregarded, that the reinvention plans were contributing to declining store traffic, a key Starbucks financial metric measuring sales at existing company-operated stores, in both the United States and China.

6. The Individual Defendants were aware, but did not disclose, that a proprietary staffing algorithm implemented as part of the reinvention plans caused widespread understaffing at U.S. company-operated stores. That understaffing resulted in unacceptably long wait times and drove customers away. At the same time, intensified price competition from Starbucks' competitors was causing store traffic to decline in China.

7. The truth concealed by Defendants' fraud was disclosed to Starbucks' shareholders on April 30, 2024, when Starbucks announced its Q2 2024 earnings results and reduced its full-year fiscal 2024 guidance. The Company reported results that surprised the market, including a 3% decline in North America and U.S. comparable store sales, driven by a 7% decline in store traffic, and an 11% decline in China comparable store sales, driven by a 4% decline in store traffic.

8. During an earnings call held the same day, Starbucks attributed the disappointing performance in part to longer wait times, macroeconomic conditions, and "fierce competition among value players in the [Chinese] market." Multiple analysts observed that Starbucks' Q2 2024



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

store traffic results represented its weakest performance outside of the pandemic and the global financial crisis.

9. Following these disclosures, Starbucks' stock price fell sharply, dropping 15% in a single day from a closing price of $88.49 per share on April 30, 2024 to a closing price of $74.44 per share on May 1, 2024.

10. As a result of this misconduct, the Securities Class Action was filed against the Company and certain of its executive officers, subjecting Starbucks to substantial class-wide liability exposure and significant defense costs.

11. Moreover, given the Individual Defendants' breaches of fiduciary duty, the fact that most of the Individual Defendants currently serve as directors, the substantial likelihood of director liability in this derivative action and the Securities Class Action, and the longstanding business and personal relationships among the Individual Defendants, they lack the requisite disinterestedness and independence to fairly consider a demand to initiate litigation against themselves and the other Individual Defendants on behalf of the Company.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 10(b) of the Exchange Act. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

14. In connection with the acts, conduct, and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

15. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

16. This Court has personal jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and is headquartered in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

17. Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. § 1391 because Defendants have conducted business in this District, and a substantial portion of the transaction and wrongs complained of herein occurred in this District.

## PARTIES

**Plaintiff**

18. Plaintiff has been a Starbucks shareholder since prior to the facts at issue in this action and has continuously held Starbucks shares at all relevant times.

**Nominal Defendant**

19. Nominal Defendant Starbucks is incorporated under the laws of Washington with its principal executive offices at 2401 Utah Avenue South, Seattle, Washington 98134. Starbucks' common stock is traded on the NASDAQ Stock Market ("Nasdaq") under the ticker symbol "SBUX."



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**Individual Defendants**

20. Defendant Laxman Narasimhan ("Narasimhan") served as Starbucks' Chief Executive Officer ("CEO") and as a member of the Board from March 2023 through August 2024. According to the proxy statement filed with the SEC on Schedule 14A on January 24, 2025 (the "2025 Proxy"), Narasimhan received total compensation of $21,530,692 from the Company during the 2024 fiscal year. The 2025 Proxy further reports that, as of January 10, 2025, Narasimhan beneficially owned 39,677.9 shares of Starbucks common stock, with an approximate market value of $3.94 million. Narasimhan is named as a defendant in the Securities Class Action.

21. Defendant Richard E. Allison, Jr. ("Allison") has served as a member of the Board since September 2019 and serves on the Audit and Compliance Committee (the "Audit Committee"). According to the 2025 Proxy, Allison received $329,979 in total compensation from the Company during the 2024 fiscal year. The 2025 Proxy also states that, as of January 10, 2025, Allison owned 10,000 shares of Starbucks common stock valued at approximately $992,500, along with 21,553.252 Deferred Stock Units.

22. Defendant Andrew Campion ("Campion") has served as a member of the Board since September 2019 and serves as Chair of the Audit Committee. According to the 2025 Proxy, Campion received total compensation of $339,965 from the Company during the 2024 fiscal year. The 2025 Proxy further reports that, as of January 10, 2025, Campion beneficially owned 21,768.252 Deferred Stock Units.

23. Defendant Beth Ford ("Ford") has served as a member of the Board since January 2023. According to the 2025 Proxy, Ford received $336,746 in total compensation from the Company during the 2024 fiscal year. The 2025 Proxy also states that, as of January 10, 2025, Ford beneficially owned 7,030 Deferred Stock Units.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

24. Defendant Mellody Hobson ("Hobson") served as a member of the Board from January 2005 until her retirement in March 2025. According to the 2025 Proxy, Hobson received $494,969 in total compensation from the Company during the 2024 fiscal year. The 2025 Proxy further reports that, as of January 10, 2025, Hobson beneficially owned 664,560 shares of Starbucks common stock, valued at $61.3 million, as well as 63,350.98 Deferred Stock Units.

25. Defendant Jorgen Vig Knudstorp ("Knudstorp") has served as a member of the Board since 2017 and serves on the Audit Committee. According to the 2025 Proxy, Knudstorp received $329,979 in total compensation from the Company during the 2024 fiscal year. The 2025 Proxy also states that, as of January 10, 2025, Knudstorp beneficially owned 18,380 shares of Starbucks common stock, valued at $1.7 million, together with 17,968.638 Deferred Stock Units.

26. Defendant Neal Mohan ("Mohan") has served as a member of the Board since January 2024 and serves on the Board's Governance Committee. According to the 2025 Proxy, Mohan received $373,602 in total compensation from the Company during the 2024 fiscal year. The 2025 Proxy further reports that, as of January 10, 2025, Mohan beneficially owned 4,153 Deferred Stock Units.

27. Defendant Daniel Servitje ("Servitje") has served as a member of the Board since January 2024 and serves on the Board's Environmental, Partner, and Community Impact Committee. According to the 2025 Proxy, Servitje received $373,602 in total compensation from the Company during the 2024 fiscal year. The 2025 Proxy also states that, as of January 10, 2025, Servitje beneficially owned 4,153 shares of Deferred Stock Units.

28. Defendant Mike Sievert ("Sievert") has served as a member of the Board since January 2024 and serves on the Board's Compensation and Management Development Committee. According to the 2025 Proxy, Sievert received $373,602 in total compensation from the



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Company during the 2024 fiscal year. The 2025 Proxy further reports that, as of January 10, 2025, Sievert beneficially owned 4,070 shares of Starbucks common stock, valued at $375,457.50.

29. Defendant Wei Zhang ("Zhang") has served as a member of the Board since October 2023 and serves on the Audit Committee. According to the 2025 Proxy, Zhang received $309,917 in total compensation from the Company during the 2024 fiscal year. The 2025 Proxy also states that, as of January 10, 2025, Zhang beneficially owned 5,304 Deferred Stock Units.

30. Defendant Satya Nadella ("Nadella") served as a member of the Board from 2017 until May 30, 2024. According to the 2025 Proxy, Nadella received $309,917 in total compensation from the Company during the 2024 fiscal year.

31. Defendant Rachel Ruggeri ("Ruggeri") has served as the Company's Chief Financial Officer ("CFO") and Executive Vice President ("EVP") since February 2021. According to the 2025 Proxy, Ruggeri received total compensation of $6,627,008 from the Company during the 2024 fiscal year. The 2025 Proxy further states that, as of January 10, 2025, Ruggeri beneficially owned 26,420 shares of Starbucks common stock, valued at approximately $2.6 million, along with 5,107 Restricted Stock Units. Ruggeri is named as a defendant in the Securities Class Action.

**<u>Relevant Non-Parties</u>**

32. Non-Party Marissa Mayer ("Mayer") has served as a member of the Board since June 2025 and serves on the Nominating and Corporate Governance Committee.

33. Non-Party Brian Niccol ("Niccol") has served as the Company's CEO and as Chairman of the Board since September 2024.

34. Non-Party Dr. Dambisa Moyo ("Moyo") has served as a member of the Board since June 2025 and serves on the Audit Committee and the Nominating and Corporate Governance Committee.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## SUBSTANTIVE ALLEGATIONS

**Factual Background**

35. In September 2022, the Individual Defendants announced a three-year Reinvention plan intended to elevate Starbucks' brand worldwide, accelerate long-term growth, and improve operating efficiencies. The Reinvention Plan projected a significant increase in comparable store sales growth to a range of 7% to 9% annually from FY 2023 through FY 2025, both globally and in the United States, compared to a prior range of 4% to 5%.

36. With respect to China, the Individual Defendants told investors that Starbucks expected outsized comparable store sales growth in FY 2023 and FY 2024 as the most severe effects of pandemic-related lockdowns subsided, followed by normalized growth in a higher range of 4% to 6% in FY 2025, up from the prior range of 2% to 4%.

37. At the same time the Reinvention Plan was announced, Starbucks disclosed a leadership transition, naming Narasimhan as the Company's next CEO following a six-month immersion program.

**The Individual Defendants Implemented a Deficient Staffing Algorithm**

38. Shortly after Narasimhan assumed the role of CEO in March 2023, Starbucks began developing a new labor algorithm for partner scheduling and staffing. The algorithm, internally referred to as the "SPA tool," relied on data inputs including historical trends, current trends, and product availability to forecast the number of labor hours required at each store throughout the day.

39. Unknown to investors, the algorithm created significant operational problems at company-operated stores in the United States. The Individual Defendants failed to modify the



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

algorithm to account for the increasing time required to prepare more complex and customized beverages amid rising customer demand.

40. The algorithm systematically underestimated the number of employee hours necessary to adequately staff stores and meet customer demand. These staffing deficiencies were worsened by the rollout of new menu offerings that employees were required to learn while working. At the same time, Starbucks launched multiple promotional events that generated order volumes exceeding Company projections and were not incorporated into the algorithm's staffing calculations.

41. The understaffing issue was further intensified because Starbucks laid off approximately 29,000 U.S. in-store employees, reducing staffing levels from 248,000 to 219,000, while simultaneously expanding its U.S. footprint by opening 380 new stores.

42. As a consequence of these combined factors, Starbucks' U.S. stores were persistently understaffed, forcing partners to manage in-person, drive-thru, mobile, and delivery orders that entered Starbucks' systems simultaneously. Internal employee surveys identified staffing shortages and scheduling problems as leading complaints, and those issues contributed to employee attrition.

43. Employees also reported internally that they were frequently assigned to understaffed stores and scheduled for fewer hours than they wanted or needed. In addition, Starbucks adopted new policies requiring employees to work a minimum of 12 hours per week, which further reduced the number of available employees at certain locations.

44. As a result of this systemic understaffing, Starbucks' customer experience deteriorated rapidly. Food and beverage wait times increased substantially, severely affecting store traffic. By November 2023, Starbucks experienced declining store traffic due to longer wait times, and by



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

January 2024, more than eight percent of customers were waiting between at least 15 and 30 minutes for a drink—an outcome considered unimaginable during the same period in 2019.

45. At the same time, the percentage of abandoned mobile orders rose into the mid-teens, and Starbucks' customer contact center was inundated with complaints from customers regarding excessive order delays.

46. The Individual Defendants knew, or were reckless in not knowing, that longer order wait times were negatively impacting U.S. store traffic. For example, Defendant Ruggeri led the Audit and Compliance Committee, which was tasked with "monitor[ing] and mitigat[ing] current and emerging labor and human capital management risks." Although Starbucks represents that it "regularly conduct[s] anonymous surveys to seek feedback from our partners on a variety of topics" and that survey results are "reviewed by senior leadership, who analyze areas of progress or deterioration and prioritize actions and activities in response to this feedback to drive meaningful improvements in partner engagement," the Company made no changes to address declining store traffic.

47. The Individual Defendants were also able to evaluate the rate at which orders were not completed, and the reasons for non-completion, by tracking transactions made by Starbucks Rewards members through the Starbucks Mobile Order & Pay app. Despite access to this data, the Individual Defendants failed to take corrective action to address declining store traffic.

**<u>The Individual Defendants Conceal that Starbucks' Sales in China Were Impacted by Fierce Competition</u>**

48. At the same time, Starbucks' China operations faced intensifying competition from an expanding number of specialty coffee chains, local cafés, and premium coffee brands, which caused sales in China to decline sharply. Starbucks' primary competitors, Cotti and Luckin,



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

aggressively cut prices to gain market share, opened stores at a faster pace than Starbucks, and emphasized a takeout-focused model with which Starbucks could not compete.

49. Defendants knew but did not disclose that these competitive pressures were undermining their reinvention plans to grow sales outside the United States, including in China.

**The Individual Defendants' False and Misleading Statements**

50. At relevant times, the Individual Defendants made statements that were materially false and misleading and omitted material adverse facts necessary to render those statements not misleading. Specifically, the Individual Defendants failed to disclose that: (i) Company management did not possess reliable information regarding revenue and growth projections; (ii) the Individual Defendants understated risks associated with seasonality in foreign markets, particularly China; (iii) the Reinvention plan did not adequately account for macroeconomic uncertainty and competitive pressures, especially in China; (iv) as a result, the Reinvention plan failed to achieve the Company's stated performance measures; and (v) consequently, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and lacked a reasonable basis at all relevant times.

51. On November 2, 2023, Starbucks issued a press release announcing its financial results for fiscal year 2023 (the "FY23 Release"). The FY23 Release reported, among other things: global comparable store sales increased 8%, driven by a 5% increase in average ticket and a 3% increase in comparable transactions; North America and U.S. comparable store sales increased 9%, driven by a 6% increase in average ticket and a 3% increase in comparable transactions; international comparable store sales increased 5%, driven by a 5% increase in comparable transactions; China comparable store sales increased 2%, driven by a 4% increase in comparable transactions and a 2% decline in average ticket; consolidated net revenues increased 12% to a record



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

$36.0 billion, or 14% excluding a 2% unfavorable impact from foreign currency translation; GAAP earnings per share of $3.58 increased 27% year-over-year; and non-GAAP earnings per share of $3.54 increased 20% year-over-year.

52. The FY23 Release quoted Narasimhan emphasizing the purported "positive impact" of the Reinvention plan, stating:

> We finished our fourth quarter and full fiscal year strong, delivering on the higher end of our full-year guidance. Our Reinvention is moving ahead of schedule, fueling revenue growth, efficiency and margin expansion…Notably, we continue to see the positive impact of our Reinvention on our partner and customer experiences, proof points that we can continue to create, grow and strengthen our business while creating value for all. As we enter the current year, in the face of macro uncertainty, we remain confident in the momentum throughout our business and headroom globally. We expect sustained momentum throughout the company for years to come.

53. The FY23 Release also quoted Ruggeri, who characterized the Company's performance as "strong," stating: "Our strong full fiscal year 2023 performance demonstrated our durable long-term growth and Reinvention plan execution…We are proud that our full fiscal year 2024 guidance will be grounded on a balance of both revenue growth and margin expansion."

54. During an earnings call held the same day, Ruggeri presented the Company's fiscal year 2024 guidance, stating:

> First, let me start with the foundation of our growth, comparable sales growth. We expect fiscal year 2024 global comp growth to be 5% to 7%...
>
> ...For color, our fiscal year 2024 U.S. comparable store sales are expected to grow in the range of 5% to 7% as our business continues to have substantial headroom spurred by our leading innovation and technology, increasing customer loyalty and strong digital engagement as evidenced by the U.S. finishing fiscal year 2023 with strong performance of 9% comp growth.
>
> Another positive driver of our fiscal year 2024 5% to 7% global comp growth is the performance in China, with comp expected to be in the range of 4% to 6% in Q2 through Q4, with a higher comp in Q1 as we lap prior year mobility restrictions. Such growth is fueled by our increasing digital capability, coupled with the local opportunity we see stemming from our relevant product innovation and purpose-designed stores, which are resonating with customers and driving engagement. Our new store performance, combined with our strong China comp guidance, will give



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> another year of double-digit revenue growth in the market delivering on our momentum.
>
> Next, in thinking of our global new store growth, we expect global new store growth of approximately 7%, with approximately 75% of the growth still coming from outside of the U.S. as we continue to focus on our strategic global expansion, reaching nearly 41,000 stores globally by the end of fiscal year 2024.
>
> Of the approximate 7% growth, we expect our U.S. store count to grow by approximately 4% in fiscal year 2024, driven by our dynamic portfolio format, expanding our whitespace opportunity.

55. During the same November 2, 2023 earnings call, Narasimhan was questioned regarding "the competitive environment" in China. In response to an inquiry from a Bank of America analyst, Narasimhan stated:

> Our brand in China is known as [Shing Baka] and it uplifts every day for millions of customers in China. And as Rachel said, our business is also strong, 5% comp in Q4. If you look at the first half of the year versus the second half of the year, the growth difference in the second half was 20% higher than the first. One thing you should know is that if you just look at the morning daypart, the morning daypart for our business in China now is higher than it was pre-COVID.
>
> We have very strong local innovation. And to answer your question, if you look at the transactions that Rachel mentioned, we're very comfortable with the food and beverage transactions. And what we see there, including the price realization that we have, the ticket that you mentioned specifically points to merchandise and what we had in the store, which we are still working through. But we feel very good about the competitive position of beverages, the competitive position of food. We feel very good about the cash returns of the stores that we are opening. They're very strong. The team has done a wonderful job in ensuring that the cost of builds are low, with the productivity that we have been able to accomplish in our stores. We feel good about the overall returns that we are getting there. And I'm heartened by the -- by how the business is coming together despite all the headwinds that have been there for the last couple of years.

56. That same day, Starbucks delivered a presentation titled "Reinvention Update," reiterating that the purpose of the Reinvention Plan was to "elevate the experiences in our stores for our partners and through our partners for our customers." Narasimhan stated:

> We have strong early momentum on every key metric of our Reinvention Plan as evidenced in this morning's Q4 and fiscal year 2023 record earnings results. Globally, in the full year, we grew comps at 8%, revenues at 12% and earnings at 20%.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> Based on the momentum we see and prevailing trends, we set strong guidance for fiscal year 2024 to grow comps 5% to 7% with revenue growth at the low end of the 10% to 12% range and earnings growth of 15% to 20%, reflecting our confidence in the multiple paths we have to deliver double-digit revenue and earnings growth.

57. During the same call, Belinda Wong, Chairwoman and Co-Chief Executive Officer of Starbucks China ("Wong"), was asked to address concerns regarding rapid growth by lower-priced competitors in China. Wong responded:

> Yeah. Thank you for the question. I think we said quite a few things about competitions already, but let me just start by saying that I'm very pleased with the results that we posted in Q4 and also in FY 2023. What I meant by that is you look at the record number of stores that we've opened this year, 785 net new stores, high as ever. And you look at our transaction comp that we posted in Q4, which is just sequential improvement from Q3, the beverages that we rolled out really drove new customers transactions in-store visits. So, very pleased with the sequential improvement.
>
> Now, I spoke about the full spectrum of experience in my presentation. So let me just add some colors to that. In China, Starbucks is the only brand right now uniquely providing full categories in the space in the channels that we have. We have beverage, obviously; food, merch, coffee, full spectrum at our scale where we're very unique. We look at all dayparts, very meaningful, four dayparts that we have built out and I talked about the breakfast daypart that we're now even exceeding 2019. So that's very exciting. So four very meaningful dayparts.
>
> You look at the store portfolio that [Narasimhan] just mentioned, we probably have one of the best real estate portfolio for retail companies in China. So you look at our 6,800 stores, they are in the best locations in China which helps us to provide the full spectrum of service that we provide. So we have all that to fulfill our customers occasions needs and I am very confident that is only the beginning. The early chapters was you looked at the white space, that we haven't opened. The comp sales that we're going to continue to go drive for our existing stores that we've opened, there are plenty, plenty of room to grow, a lot of headroom ahead. And we're very confident and excited. And our brand is very strong. And our partners are great. We're going to continue to move forward.

58. Defendant Narasimhan added:

> I'll just make one final comment on that. It's interesting when markets evolve, they tier. **This is a market. It's actually in its fairly early days and it hasn't yet fully tiered. You can get low priced coffee just down the street, but when you look for an experience, you look for something that's distinctive, you look for something that's quality, you look for something that's innovative, clearly you go to**



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> **another place for it. And that's the place for Starbucks**. That's the place [Shing Baka] in China.[1]

59. On January 30, 2024, the Company reported its financial results for the first fiscal quarter of 2024 and reduced its fiscal year 2024 guidance. In connection with that announcement, the Company represented that:

> Our first quarter performance was strong on many measures. **Of note was the unwavering commitment of our most loyal customers, the growth in rewards members, tender and spend per member** . . . Despite headwinds, our brand is very strong, and that coupled with innovation and a relentless focus on our green apron partners form long-term differentiators, along with focused execution on Triple Shot Reinvention, will drive balanced and attractive earnings growth.
>
> * * *
>
> I am proud of the significant margin expansion and double-digit earnings growth we delivered in our first quarter, as it underscores our multiple paths to earnings growth. We are executing on several levers within those multiple paths to continue delivering against our balanced growth model over the remainder of the year.

60. During an earnings call hosted by the Company on the same day, Narasimhan further promoted the purported "successful execution" of the Reinvention plan, stating:

> Let me walk you through the details. Our performance in the quarter was fundamentally strong. Our Q1 total company revenue was a record $9.4 billion, up 8% year-over-year. Our global comparable store sales grew 5% year-over-year, supported by a 5% comp growth in North America, driven by 4% ticket growth and 10% comp growth in China. Our global operating margins expanded by 130 basis points to 15.8% and our overall earnings per share grew 20% to $0.90. ***This speaks to the continued successful execution of our reinvention plan and the durable business we are building.***
>
> * * *
>
> We're focused on unlocking $3 billion in efficiencies, and I'm pleased to say that we're making steady progress. Our Triple Shot Reinvention efforts delivered 130 basis points of margin expansion in the first quarter of the fiscal year. As you heard me say often, the key to our success is the experience that our partners create for our customers. We're investing in a better experience for our partners to advance our business to a more balanced growth model as we unlock efficiency. ***In the quarter, we have seen the effectiveness of the Reinvention driven investments we***

[1] All emphasis herein is supplied unless otherwise noted.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

***have made in in-store operational efficiencies such as standards, equipment innovation and scheduling improvements, leading to a more stable environment for our partners.***

* * *

***We also saw great momentum in China.*** We aim to be the best in the premium market in China. Our brand equity across Starbucks and Starbucks Reserve is second to none. Based on our latest brand tracker, Starbucks continues to be the first choice in away-from-home coffee, including among the Gen Z consumers. We continue to lead in brand affinity and have a highest awareness, brand familiarity and purchase intent scores. We have the most outstanding partners in our stores with very strong customer connection and the highest retention rates in our industry. We offer distinctive global and locally relevant product innovation anchored on superior coffee with food attachments and a morning daypart that now have surpassed pre-COVID levels.

Our loyal customers, a major part of tender, are coming more often and our loyalty program is growing. We're doing all of this while offering premium physical and digital experiences delivered across our distinctive store portfolio across other physical channels and through our digital connection and doing so at a commensurate value. This ambition of being best in premium in China is in line with our long-term growth ambitions for China.

* * *

There are 3 key elements in our China strategy.

First, we are offering more coffee forward, locally relevant product innovations and we're increasing engagement in social media channels to influencers and partnerships, which are highly effective in China. These actions are increasing awareness and have led to greater customer frequency. Second, we have made significant investments in technology, increasing our omnichannel capability, allowing us to serve more customers through new occasions. These investments have also led to a more digitized store environment, increasing efficiency of our supply chain and stores while enhancing the partner experience and strengthening our unit economics in both existing and new stores.

Finally, we're increasing the percentage of new stores opening in lower tier markets and new county cities where we see meaningfully stronger new store economics. As you can see, we moved quickly to respond and implement a plan to address these unexpected headwinds. It will take time for these action plans to be fully realized. That said, we remain confident in our Triple Shot strategy and our long-term growth. So let me share some of the progress in the quarter.

Our first Triple Shot Reinvention priority is to elevate our brand by operating great stores and driving product innovation. The best lever for elevating our brand is our store experience. We continue to raise the bar on running great stores with a focus



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

on enhancing both our partner and customer experience.

61. During the same earnings call, analysts again questioned the Company about competitive dynamics in China. For example, analyst Peter Saleh asked:

> . . . I did want to ask about the check dynamics going on in China. It looks like down call it 9%. It's a pretty steep decline. Can you just talk about the promotional environment that you're seeing there, and what exactly you guys are doing to combat that? And just more specifically, should we expect this check impact to really continue for the balance of the year, or how do we think about that going forward? Thank you.

62. Wong responded:

> Okay. Thank you for the question. Let me just address the AT decline first, the average check decline. First of all, our beverage and food sales were strong and contributed majority of our comp growth in Q1 and our AT decline, the 9% decline mainly came from two areas. One is lower sales of our higher priced merchandise as our consumers now more cautious in their spending. But the merchandise category constitutes a relatively small portion of our sales mix.
>
> Second is the targeted promotional investments that we're making to personalize offers and reward customers' behaviors in order to drive trial frequency. Now this enabled us to optimize our sales and margin. And this is powered by China Deep Brew that helps us to design the right offers to the right cohorts of customers at the right time. So that's mainly the reasons for decline.
>
> And you asked about the promotional environment. Let me just say this. The coffee market is evolving as [Narasimham] said and going through a transition. It's still early days and it has not yet fully tiered, right. You see mass – an influx of mass market competitors focused on fast store expansion and low-price tactics to drive trial. This will shake out over time, and yes, we're operating under an increased promotional environment.
>
> **We're not interested in entering the price war. We're focusing on capturing high-quality but profitable sustainable growth.** Okay? And it is our aim to be the best and lead in the premium market, as Lax has said, which Starbucks has pioneered in China 25 years ago. And we will continue to focus on premium experience that is high-quality coffee and human connection.
>
> And we have clear strategies to fuel our comp and total growth. As [Narasimhan] shared, the three points, well, the three strategies, I'll add a little bit more colors. We're going to dial up our beverage and food innovation with robust marketing activations on social media and in-store. We're going to accelerate our visualization efforts to drive innovations, sales and productivity. We're going to continue our new store expansion, in-fill in existing cities and accelerate new county city entries,



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> as [Narasimhan] has said. We're going to dial up our omni-channel expansion, scale up our membership program, and continue to invest in our partners.
>
> So we have all these strategies to drive our comp growth and total growth and traffic and ticket. So we are very confident in our ability to deliver our growth in a short and long term. Thank you.

**<u>The Truth Emerges</u>**

63. On April 30, 2024, Starbucks issued a press release announcing disappointing financial results for the second fiscal quarter of 2024 and lowering its fiscal year 2024 guidance. The Company disclosed that:

> Global comparable store sales declined 4%, driven by a 6% decline in comparable transactions, partially offset by a 2% increase in average ticket; Consolidated net revenues declined 2%, to $8.6 billion, or a 1% decline on a constant currency basis; GAAP operating margin contracted 240 basis points year-over-year to 12.8%, primarily driven by deleverage, incremental investments in store partner wages and benefits, increased promotional activities, lapping the gain on the sale of Seattle's Best Coffee brand, as well as higher general and administrative costs primarily in support of Reinvention; GAAP earnings per share of $0.68 declined 14% over prior year; Non-GAAP earnings per share of $0.68 declined 8% over prior year, or declined 7% on a constant currency basis.

64. Defendants Narasimhan and Ruggeri subsequently addressed the Company's deteriorating performance. Narasimhan stated:

> In a highly challenged environment, this quarter's results do not reflect the power of our brand, our capabilities or the opportunities ahead. It did not meet our expectations, but we understand the specific challenges and opportunities immediately in front of us. We have a clear plan to execute and the entire organization is mobilized around it. We are very confident in our long-term and know that our Triple Shot Reinvention with Two Pumps strategy will deliver on the limitless potential of this brand.

65. Ruggeri added:

> While it was a difficult quarter, we learned from our own underperformance and sharpened our focus with a comprehensive roadmap of well thought out actions making the path forward clear. On this path, we remain committed to our disciplined approach to capital allocation as we navigate this complex and dynamic environment.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

66. During an earnings call held the same day, Ruggeri continued to describe the Company's "challenging operating environment," stating:

> Still, we face a challenging operating environment. Headwinds discussed last quarter have continued. In a number of key markets, we continue to feel the impact of a more cautious consumer, particularly with our more occasional customer, and a deteriorating economic outlook has weighed on customer traffic, an impact felt broadly across the industry. In the U.S., severe weather impacted both our U.S. and total company comp by nearly 3% during the quarter. The remainder of our challenges were attributable to fewer visits from our more occasional customers.
>
> Turning elsewhere. We still see economic volatility in the Middle East, but we remain confident in the region's long-term growth opportunities. In China, we still see the effects of a slower-than-expected recovery, and we see fierce competition among value players in the market. But we are strengthening our premium position, and our team in China continues to execute with terrific rigor and heart as the market shakeout continues and as demand recovers and matures.
>
> None of these realities are excuses. Some, like weather, are transitory. Others, like a more cautious consumer, may persist longer, but much is within our control. There are 3 execution opportunities in our U.S. business I want to expand on: first, meet the demand we have across dayparts to drive future growth; second, launch even more exciting and relevant new products while maintaining our focus on core coffee forward offerings; and third, reach and demonstrate more value for our occasional and non-Starbucks Rewards customers.

67. During the earnings call, in response to a question regarding exit rates, Narasimhan stated:

> **<u>Sara Harkavy Senatore Bank of America – Analyst:</u>**
> The first is that you talked about weather as a headwind, and then you said that lavender latte in the quarter was one of the strongest launches you've had similar to PSL. But your exit rate -- it sounds like you're saying your exit rate was largely unchanged. So I'm trying to reconcile what would appear to have been headwinds that aren't reoccurring and then very successful innovation with the guidance and the exit rates.
>
> **<u>Defendant Narasimhan:</u>**
> Let me address both of them by pointing to the underlying pressures that we see consumers face just in terms of what they have available to spend. So there's no question that if you take some of these transitory headwinds out, which, of course, are not an excuse in any way, and you look at the underlying headwinds particularly around the pressures that consumers face particularly with the occasional customer, what we're seeing is that's where the challenge is. It's a challenge with their traffic and it's their challenge with them coming into our stores



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

68. The April 30, 2024, earnings call also exposed the truth of Starbucks' declining store traffic in the United States. Defendant Narasimhan admitted that "challenge[s] meeting our peak morning demand in the U.S." and "long wait times" contributed to the decline of U.S. store traffic.

69. On this news, the price of Starbucks stock declined more than 15% in one day, from a closing price of $88.49 per share on April 30, 2024, to a closing price of $74.44 per share on May 1, 2024.

70. Analysts also reacted negatively to the news. For instance, on May 1, 2024, Deutsche Bank issued a report which stated, with respect to the Company's operations in China, that "China remains weak amidst a cautious consumer backdrop and increasing competitive intensity, and the trimmed unit growth guide likely adds to concerns on the growth outlook."

71. On May 29, 2024, Bloomberg published a report based on the accounts of current Starbucks employees who confirmed that Starbucks' new scheduling algorithm caused stores to be understaffed, which caused significantly longer food and drink wait times. According to those employees, the algorithm did not "adequately account for the time it t[ook] to fulfill a ballooning number of special customer requests like extra espresso shots or 12 cold foam, as well as the effect of more corporate promotions." The report further cited employees confirming that due to the understaffing, workers were "struggling to simultaneously juggle in-person, drive-thru, mobile, and delivery orders and customers were waiting longer."

**<u>Stock Repurchases During the Wrongdoing</u>**

72. During the wrongdoing alleged herein, Starbucks repurchased shares of its own common stock at artificially inflated prices, causing substantial harm to the Company. In total, Starbucks spent approximately $890 million to repurchase roughly 8.9 million shares at prices that



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

did not reflect the stock's actual value. As a result, Starbucks overpaid for its share repurchases by more than $227 million.

73. As disclosed in the Company's quarterly report on Form 10-Q filed with the SEC on January 30, 2024, Starbucks repurchased 8,900,855 shares of its common stock between October 30, 2023 and December 31, 2023, at a total approximate cost of $890,096,717, reflecting an average purchase price of approximately $100 per share. Because the Company's stock was worth only $74.44 per share, Starbucks overpaid for these repurchases by approximately $227,517,071.

## DAMAGES TO THE COMPANY

74. As a direct and proximate result of the Individual Defendants' conduct, Starbucks has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

a. Any funds paid to defend or settle the Securities Class Action;

b. Operational losses arising from defendants' oversight failure;

c. Loss of reputation, market credibility, and increased cost of capital and

d. Costs incurred from compensation and benefits paid to Defendants who have breached their duties to the Company.

75. In addition, Starbucks's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

76. The actions complained of herein have irreparably damaged Starbucks's corporate image and goodwill. For at least the foreseeable future, Starbucks will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

illegal behavior and have misled the investing public, such that Starbucks's ability to raise equity capital or debt on favorable terms in the future is now impaired.

**DUTIES OF THE INDIVIDUAL DEFENDANTS**

77. Starbucks' Board members are held to the highest standards of honesty and integrity and are responsible for overseeing the Company's business practices and policies and ensuring the integrity of its financial and business records.

78. The Individual Defendants engaged in knowing and culpable misconduct, acted without good faith, and recklessly disregarded their obligations as directors and officers of Starbucks.

79. By virtue of their positions as officers and/or directors of Starbucks, and their ability to control the Company's business and corporate affairs, the Individual Defendants owed fiduciary duties of trust, loyalty, good faith, and due care to Starbucks and its shareholders. They were required to manage and control Starbucks in a fair, just, honest, and equitable manner and to act in the best interests of Starbucks and its shareholders for the equal benefit of all shareholders.

80. Each director and officer owed Starbucks and its shareholders a fiduciary duty to act with good faith and diligence in administering the Company and in the use and preservation of its property and assets, and to adhere to the highest standards of fair dealing.

81. Because of their positions of control and authority as directors and/or officers, the Individual Defendants were able to, and did, directly and/or indirectly, control the wrongful conduct alleged herein.

82. In fulfilling their duties, Starbucks' officers and directors were required to exercise reasonable and prudent supervision over the Company's management, policies, controls, and operations.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

83. Each Individual Defendant, by virtue of his or her role as a director and/or officer, owed Starbucks and its shareholders the highest fiduciary duties of loyalty, good faith, and due care and diligence in managing and administering the Company's affairs and in safeguarding its property and assets. The misconduct alleged herein reflects knowing and culpable violations of those duties, an absence of good faith, or a reckless disregard of duties that the Individual Defendants knew or should have known posed a substantial risk of serious harm to the Company.

84. As senior executive officers and directors of a publicly traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to: ensure that Starbucks implemented and properly monitored internal controls over financial reporting; prevent the dissemination of inaccurate or untruthful information regarding the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects; prevent the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations; and cause Starbucks to disclose in its SEC filings all material facts described in this Complaint that were not disclosed, so that the market price of the Company's common stock would reflect truthful, accurate, and fairly presented information.

85. To satisfy their duties, Starbucks' officers and directors were required to exercise reasonable and prudent supervision over the Company's management, policies, practices, and internal controls. In carrying out those obligations, they were required, among other things, to:

- Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Washington and the United States, and pursuant to Starbucks' own Standards of Business Conduct (the "Code of Conduct");
- Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the Company's stock;

- Remain informed as to how Starbucks conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;
- Establish and maintain systematic and accurate records and reports of the business and internal affairs of Starbucks and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;
- Maintain, implement, and monitor an adequate and functioning system of internal legal, financial, and management controls, such that Starbucks' publicly disclosed financial information would be accurate;
- Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;
- Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and
- Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

86. Each Individual Defendant further owed Starbucks and its shareholders a duty of loyalty requiring that Starbucks' interests and those of its shareholders take precedence over personal interests, and requiring that they refrain from using their positions, influence, or access to Company information for personal gain.

87. At all relevant times, the Individual Defendants acted as agents of one another and of Starbucks and acted within the course and scope of that agency.

88. By virtue of their positions of control and authority, the Individual Defendants were able to, and did, directly or indirectly, exercise control over the wrongful conduct alleged herein and over the content of Starbucks' public statements.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**The Audit Committee Charter**

89. Under Starbucks' Audit Committee Charter, the Audit Committee is responsible "for overseeing the accounting and financial reporting processes of Starbucks Corporation (the 'Company') and the internal and external audit processes."

90. The Charter further provides that the Audit Committee assists the Board in "fulfilling its oversight responsibilities by reviewing the financial information that will be provided to shareholders and others, the systems of internal control that management and the Board have established, the Company's risk management practices, and compliance with the Company's Standards of Business Conduct."

91. In the section titled "Responsibilities," the Audit Committee Charter provides that the Audit Committee shall "[s]elect, appoint, determine funding and other retention terms for, oversee, and, if the Committee determines necessary or appropriate, replace, the independent auditors."

92. The Audit Committee Charter further assigns the Audit Committee responsibility to review the Company's quarterly and annual financial results with management and the independent auditors, including:

- The financial statements and related disclosures to be included in the Company's annual Report to Shareholders, the Annual Report on Form 10-K, the Quarterly Reports on Form 10- Q, or similar publicly filed documents
- Information to be discussed in the Company's quarterly earnings announcements, including the internal controls around these processes.
- Non-GAAP financial measures reported by the Company in its quarterly earnings announcements or publicly filed documents, including the internal controls around these processes.
- Significant or complex transactions not a normal part of the Company's operations.
- Any off-balance sheet structures.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- The Company's critical accounting policies and estimates and related disclosures in the Company's publicly filed documents.
- The chief executive officer and chief financial officer disclosure and certifications under Sections 302 and 906 of the Sarbanes-Oxley Act.
- Significant management judgments and accounting estimates.
- Significant changes in the Company's accounting policies or their application, or alternative GAAP treatments discussed with the independent auditor, including the reasons for changes made at the Company's discretion.
- Adjustments proposed by the independent auditors.
- The independent auditors' audit opinion, inclusive of critical audit matters ('CAMs'), their judgment on the quality of the Company's accounting policies and financial reporting, and other matters they are required to communicate to the Committee under applicable professional standards.
- Any fraud or other irregularity (whether or not material) that involves management or other partners who have a significant role in the Company's internal control environment.

93. With respect to internal controls over financial reporting, the Audit Committee Charter requires the Audit Committee to review management's assessment and the independent auditors' attestation, consider whether changes to controls are appropriate, discuss material weaknesses or significant deficiencies and remediation plans, and review related findings and recommendations.

94. Regarding risk oversight and risk management, the Audit Committee Charter provides that the Audit Committee shall periodically review and discuss with management the Company's major and emerging financial, operational, legal, and regulatory risks; evaluate the Company's risk management programs and controls; and report regularly to the Board regarding such matters.

95. With respect to legal and ethical compliance, the Audit Committee Charter requires the Audit Committee to review and discuss the adequacy and effectiveness of the Company's legal,



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

regulatory, ethics, and compliance programs, including the Standards of Business Conduct, the Code of Ethics for the CEO, COO, CFO, and Finance Leaders, and the Policy for the Review and Approval of Related Person Transactions Required to be Disclosed in Proxy Statements, and to review with management the systems used to monitor compliance with those standards and applicable laws.

**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

96. Plaintiff brings this action derivatively on behalf of, and for the benefit of, the Company to remedy injuries suffered and to be suffered as a direct and proximate result of the Individual Defendants' breaches of fiduciary duty.

97. Starbucks is named solely as a nominal defendant. This action is not collusive and is not brought to improperly confer jurisdiction on this Court.

98. Plaintiff is a current Starbucks shareholder and continuously held Starbucks stock during the period of the Individual Defendants' alleged wrongdoing. Plaintiff will fairly and adequately represent the interests of the Company and has retained counsel experienced in derivative litigation.

99. A pre-suit demand on Starbucks' Board is excused as futile. At the time this action commenced, the eleven-member Board consisted of Defendants Allison, Campion, Ford, Knudstorp, Mohan, Servitje, Sievert, and Zhang (the "Director Defendants"), as well as non-parties Mayer, Moyo, and Niccol, each of whom joined the Board after the wrongdoing alleged herein. As detailed below, nine current Board members lack independence and disinterestedness, including because they face a substantial likelihood of liability. Accordingly, any demand would have been futile.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

100. The Director Defendants knew or should have known of the false and misleading statements issued on the Company's behalf and failed to take good-faith steps to prevent or correct them. Each Director Defendant approved and/or permitted the misconduct alleged herein, participated in efforts to conceal that misconduct from shareholders, or recklessly and with gross negligence disregarded the wrongful conduct, rendering them interested parties.

101. The Director Defendants also willfully ignored, or recklessly failed to inform themselves of, serious deficiencies in the Company's internal controls, practices, and procedures and failed to make a good-faith effort to remedy those deficiencies or prevent their recurrence.

102. Defendant Allison is not disinterested or independent. He has served as a director since 2019 and is a member of the Audit Committee, for which he receives substantial compensation. Allison personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein during earnings calls, SEC filings, press releases, and other public communications. As a principal participant in the misconduct, he faces a substantial likelihood of liability and cannot impartially consider a demand.

103. Defendant Campion is not disinterested or independent. He has served as a director since 2019 and as Chair of the Audit Committee and receives substantial director compensation. Campion personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein. He therefore faces a substantial likelihood of liability and cannot objectively consider a demand.

104. Defendant Ford is not disinterested or independent. She has served as a director since January 2023 and receives substantial compensation for that service. Ford personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein and therefore faces a substantial likelihood of liability that precludes consideration of a demand.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

105. Defendant Knudstorp is not disinterested or independent. He has served as a director since January 2017 and as a member of the Audit Committee and receives substantial director compensation. Knudstorp personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein, faces a substantial likelihood of liability, and cannot consider a demand.

106. Defendant Mohan is not disinterested or independent. He has served as a director since January 2024 and receives substantial compensation. Mohan personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein and faces a substantial likelihood of liability, rendering demand futile.

107. Defendant Servitje is not disinterested or independent. He has served as a director since January 2024 and receives substantial compensation. Servitje personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein and therefore cannot objectively consider a demand.

108. Defendant Sievert is not disinterested or independent. He has served as a director since January 2024 and receives substantial compensation. Sievert personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein, faces a substantial likelihood of liability, and cannot consider a demand.

109. Defendant Zhang is not disinterested or independent. She has served as a director since October 2023 and as a member of the Audit Committee and receives substantial compensation. Zhang personally reviewed, signed, authorized, and/or made the false and misleading statements alleged herein and therefore cannot impartially consider a demand.

110. Defendant Nadella is not disinterested or independent. He served as a director from 2017 until May 30, 2024 and received substantial compensation. Nadella personally reviewed,



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

signed, authorized, and/or made the false and misleading statements alleged herein and faces a substantial likelihood of liability that precludes demand.

111. Defendants Allison, Campion, Knudstorp, and Zhang served on the Audit Committee during the wrongdoing (the "Audit Defendants"). Under the Audit Committee Charter, they were charged with oversight of financial reporting, internal controls, and audits. Despite those responsibilities, the Audit Defendants breached their fiduciary duties by failing to prevent, correct, or disclose material misstatements and omissions regarding the Company's business and internal controls. Because they face a substantial likelihood of liability, they cannot consider a demand to sue themselves.

112. The Director Defendants were subject to the Company's Code of Conduct, which imposes standards exceeding baseline fiduciary duties. The Director Defendants violated the Code of Conduct by knowingly or recklessly participating in, or causing, the issuance of materially false and misleading statements. As a result, they face a substantial likelihood of liability, rendering demand futile.

113. All current Board members derive substantial income from the Company, exercise control over the Company, and are indebted to one another through shared relationships. These conflicts have prevented the Board from taking remedial action. For example, no Director Defendant has sought to enforce the Company's Clawback Policy, which provides that "the Company may seek reimbursement with respect to incentive compensation paid or awarded to executive officers . . . in the event of a financial restatement or misconduct."

114. Non-party Niccol could not disinterestedly and independently consider a demand for action. Niccol is employed full time as the CEO of Starbucks and is not independent under the relevant NASDAQ listing rules and, according to the Company's most recent proxy statement, his



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

fellow directors have also determined he is not independent under Starbucks' independence guidelines. In his capacity as CEO, he earns millions of dollars annually and secures valuable perks including use of the corporate jet, which are material to him. Further, Niccol's continued employment is controlled by the Director Defendants who comprise a majority of the Board and he could not disinterestedly consider a demand to sue them when doing so could result in losing his position as CEO. For these reasons, demand is excused as to Niccol.

115. The misconduct alleged herein could not have resulted from a valid exercise of business judgment because it was undertaken in bad faith and involved intentional, reckless, or disloyal conduct. As a result, the directors cannot claim exculpation under the Company's charter. Because a majority of the Board faces a substantial likelihood of liability, they are self-interested and incapable of exercising independent and disinterested judgment regarding this action. Demand is therefore excused.

116. The acts alleged herein constitute non-ratifiable breaches of fiduciary duty by Starbucks' officers and directors.

117. The Individual Defendants may also be insulated from personal liability by directors' and officers' liability insurance purchased with Company funds. Such policies often contain an "insured-versus-insured exclusion," eliminating coverage for suits brought directly by the Company against its directors and officers. Accordingly, the Director Defendants cannot be expected to cause the Company to sue themselves. By contrast, derivative litigation permits recovery through such insurance, if it exists. Demand is therefore futile and excused.

118. If no such insurance exists, the directors would likewise refuse to sue because doing so would expose them to substantial uninsured personal liability. Demand is therefore futile in that circumstance as well.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## COUNT I

***Against the Individual Defendants for Violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78(j), and Rule 10b-5, 17 C.F.R. § 240.10b-5***

119. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

120. The Individual Defendants participated in a scheme with the purpose and effect of defrauding Starbucks. Not only is Starbucks now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company itself is also one of the largest victims of the unlawful scheme perpetrated upon Starbucks by the Individual Defendants.

121. During the wrongdoing, the Individual Defendants caused the Company to overpay by approximately $227.5 million to repurchase roughly 8.9 million shares.

122. The Individual Defendants also individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct designed to falsify the Company's press releases, public statements, and periodic and current reports filed with the SEC.

123. The Individual Defendants employed devices, schemes, and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Starbucks not misleading.

124. The Individual Defendants, as directors and officers of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to and did



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

control the conduct complained of herein and the content of the public statements disseminated by Starbucks.

125. The Individual Defendants acted with scienter during the wrongdoing, in that they either had actual knowledge of the scheme and the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received direct briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

126. By virtue of the foregoing, the Individual Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

***Against the Individual Defendants for Breach of Fiduciary Duty***

127. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

128. The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

129. The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

130. The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by failing to implement and monitor adequate internal controls over the Company's financial reporting and, as a consequence, issuing or permitting the



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

issuance of materially false and misleading statements in the Company's SEC filings and other public disclosures. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

131. As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

132. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

**COUNT III**

***Against the Individual Defendants for Unjust Enrichment***

133. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

134. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Starbucks.

135. The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Starbucks that were tied to the performance or artificially inflated valuation of Starbucks, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

136. Plaintiff, as a shareholder and a representative of Starbucks, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

137. Plaintiff, on behalf of Starbucks, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of Starbucks, demands judgment as follows:

A. Declaring that Plaintiff may maintain this action on behalf of Starbucks and that Plaintiff is an adequate representative of the Company;

B. Against all of Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C. Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Starbucks;

D. Directing Starbucks to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Starbucks and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

a proposal to strengthen the Company's controls over financial reporting;

a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;



CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

a proposal to strengthen Starbucks's oversight of its disclosure procedures;

a provision to control insider transactions; and

a provision to permit the stockholders of Starbucks to nominate at least three candidates for election to the Board;

E. Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of Starbucks has an effective remedy;

F. Awarding to Starbucks restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by Defendants;

G. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: December 30, 2025

Respectfully submitted,

**CORR CRONIN LLP**

*s/Colin M. George*
Colin M. George, WSBA No. 45131
1015 Second Avenue, 10th Floor
Seattle, WA 98104
Telephone: (206) 501-3544
cgeorge@corrcronin.com

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
745 Fifth Avenue, Fifth Floor
New York, New York 10151
Telephone: (212) 935-7400

bsachsmichaels@glancylaw.com

-and-

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
rprongay@glancylaw.com
prajesh@glancylaw.com

*Counsel for Plaintiff*

**VERIFICATION**

I, Rosa Marquez, do hereby verify that I am a holder of common stock of Starbucks Corporation and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 12/22/2025

Rosa Marquez

Rosa Marquez